UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTIN D.,[1] | Case No. 2:23-cv-01953-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| KILOLO KIJAKAZI, | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security denying Christin D.'s application for disability benefits under Title II and Title XVI of the Social Security Act. The Court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 16), the Commissioner's Cross-Motion to Affirm and Response (ECF No. 18), and Plaintiff's Reply (ECF No. 19). For the reasons discussed below, the Court grants Plaintiff's Motion and remands for further proceedings.

**I.    BACKGROUND**

On December 5, 2019, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act as well as supplemental security income under Title XVI, alleging an onset date of December 1, 2017. ECF No. 12-1 at 33.[2] Plaintiff's claim was denied initially and upon reconsideration. *Id.*

A telephonic hearing was held before Administrative Law Judge ("ALJ") Kathleen Kadlec on July 15, 2022. *Id.* On March 15, 2023, ALJ Kadlec found that Plaintiff was not disabled. *Id.* at 54. Plaintiff appealed that decision to the Appeals Council, which denied her request on September 27, 2023. *Id.* at 9. Plaintiff then commenced this action for judicial review

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

[2] ECF No. 12 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. All citations to the Administrative Record will use the CM/ECF page numbers.

under 42 U.S.C. § 405(g) on November 22, 2023. *See* ECF No. 1.

**II.  STANDARD OF REVIEW**

Administrative decisions in Social Security disability-benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action. . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commisioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the

2

Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the

ALJ will make a finding of non-disability. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy

within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an SGA. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2017, the alleged onset date. ECF No. 12-1 at 36.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumber and cervical spine, left hip osteoarthritis, obesity/eating disorder, diabetes mellitus, peripheral neuropathy, and left knee osteoarthritis. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 39.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform light work but with the following limitations:

> She can stand and walk no more than a total of 4 hours in an 8-hour workday; can occasionally operate foot controls bilaterally; can frequently operate hand controls bilaterally; can occasionally reach overhead bilaterally; can frequently reach in other directions, handle, finger, and feel bilaterally; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can never work at unprotected heights; can have no

>more than occasional exposure to moving mechanical parts; can occasionally operate a motor vehicle; can have no more than occasional exposure to non-atmospheric extremes of cold and heat; and can have no more than occasional exposure to vibration.

*Id.* at 40.

At step four, the ALJ found that Plaintiff could perform her past PRW as a receptionist, generally performed, and as an order clerk, generally and actually performed. *Id.* at 51.

At step five, the ALJ found that Plaintiff has not been under a disability from December 1, 2017, to the date of the decision. *Id.* at 53.

### III. ANALYSIS

#### A. The ALJ's characterization of Plaintiff's edema as non-severe was supported by substantial evidence

Plaintiff contends that the ALJ did not adequately incorporate all severe impairments into her RFC determination because she found that Plaintiff's edema did not meet the durational requirement. ECF No. 16 at 5–9. She argues that even if her edema is deemed episodic, episodic symptoms are not inconsistent with disability. *Id.* at 8. The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's edema does not meet the durational requirement because the record contains numerous exams where edema was not present. ECF No. 18 at 5–6. Nonetheless, the Commissioner claims, any error in finding Plaintiff's edema to be non-severe at step two would be harmless because the ALJ discussed Plaintiff's edema in her step four evaluation. *Id.* at 7.

An ALJ may discount impairments at step two of the sequential analysis by finding that an impairment is non-severe because it has not met the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). But "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citation omitted). Thus, step two "is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048–49. Because the ALJ must consider even non-severe impairments in assessing the RFC, the RFC should be "exactly the

6

same regardless of whether certain impairments are considered 'severe' or not." *Id.* at 1049. So even if an ALJ errs in finding an impairment non-severe at step two, such error is harmless if the ALJ discusses the limitations of the impairment at step four of the analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

An ALJ's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). But the ALJ's findings may be set aside if they are not supported by substantial evidence. *See Thomas*, 278 F.3d at 954. The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039; *see also Bayliss*, 427 F.3d at 1214 n.1. In determining whether the ALJ's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Reddick*, 157 F.3d at 720; *see also Smolen*, 80 F.3d at 1279.

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commisioner's interpretation. *See Burch*, 400 F.3d at 679; *Flaten*, 44 F.3d at 1457. Thus, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679.

Here, the ALJ found that Plaintiff's edema was non-severe at step two because it did not meet the 12-month durational requirement. ECF No. 12-1 at 37. The ALJ noted that Plaintiff's edema was "sporadic" and cited treatment notes in which edema was found, and others where edema was not present. *See, e.g.*, *id.* at 1875; ECF No. 12-2 at 81, 208, 225, 287, 319–20, 1271, 1824–25. Although Plaintiff cites additional instances in which edema was present in an effort to establish that the 12-month period was met, the treatment notes in which no edema was present—and in which the ALJ considered in making her finding—derive from different time

7

1   periods throughout Plaintiff's treatment history. *See, e.g.*, ECF No. 12-2 at 81, 287, 319–20,
2   1271. Thus, one rational interpretation from the record as a whole is that Plaintiff's edema was
3   "sporadic." *See Burch*, 400 F.3d at 679. The Court therefore will uphold such finding. *See*
4   *Batson*, 359 F.3d at 1193. Regardless, any error in finding Plaintiff's edema non-severe at step
5   two would be harmless, because the ALJ discussed Plaintiff's edema and corresponding
6   limitations in her formulation of the RFC at step four. *Lewis*, 498 F.3d at 911; ECF No. 12-1 at
7   42–43, 45, 47–50.

   **B.  The ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony**

   The parties dispute whether the ALJ provided specific, clear, and convincing reasons in discounting Plaintiff's subjective symptom testimony. *Compare* ECF No. 16 at 9–18 *with* ECF No. 18 at 5–9.

   In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (internal citation and quotation omitted). The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

   If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation and quotation omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (citation omitted); *Thomas,* 278 F.3d at 958 (requiring the ALJ to sufficiently explain why they

discounted the claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. ECF No. 12-1 at 41. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ cited conservative treatment, effectiveness of treatment, daily activities, and objective medical evidence to discount Plaintiff's symptom testimony. *Id.* at 42–50. The Court addresses each in turn.

### 1. *Conservative Treatment*

The ALJ did not credit Plaintiff's symptom testimony, in part, because her treatment was conservative. ECF No. 12-1 at 34–40. Plaintiff refutes the notion that her treatment was conservative, pointing to the need for surgery, injections, and opioid pain medication. ECF No. 16 at 13–14. But the Commissioner claims that the ALJ properly discounted Plaintiff's testimony because the record showed evidence of conservative and effective treatment. ECF No. 18 at 9–10.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). However, an ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available. *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010).

Here, the ALJ noted that Plaintiff received conservative treatment both before and after her back surgery. ECF No. 12-1 at 42, 46–47. In most of her references to conservative

treatment, the ALJ did not describe what the conservative treatment entailed, but at one point referred to taking medications such as opioid analgesics as conservative. *Id.* at 46. Later, the ALJ stated that "aside from her back surgery," Plaintiff's treatment was "quite conservative." *Id.* at 47. She also noted that Plaintiff's walker use was not consistent with her conservative treatment, but that doing yard work was. *Id.*

The record shows that Plaintiff's treatment regimen included back surgery, physical therapy, trigger point injections, epidural steroid injections, and opioid pain medication. *See generally* ECF Nos. 12-1; 12-2. But the ALJ's characterization of Plaintiff's treatment as conservative was not a specific, clear, and convincing reason to reject Plaintiff's testimony because the ALJ did not explain why this treatment regimen would be considered conservative. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("The ALJ provided no explanation why he deemed this treatment 'conservative'"). Though some early treatment notes stated that Plaintiff was treated conservatively, *see, e.g.*, ECF No. 12-2 at 91, later treatment notes acknowledged that prior conservative treatment had not been effective. *Id.* at 893–94 (recognizing "failed conservative measures" because Plaintiff's chronic back pain was not relieved by them), 902 (Plaintiff "failed to respond to aggressive conservative measures"), 907 (Plaintiff "did not respond to aggressive conservative treatment"). Moreover, as the ALJ recognized, surgery is not conservative treatment. *See Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (referring to surgery as "aggressive intervention"). And unlike conservative "over-the-counter pain medication," *see Parra*, 481 F.3d at 750–51, the use of opioid pain medication in conjunction with other treatments is generally viewed as non-conservative. *Lapierre-Gutt*, 382 F. App'x at 664 (treatment consisting of "copious" amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative); *Christie v. Astrue*, No. CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative); *Soltero De Rodriguez v. Colvin*, No. CV 14-05765-RAO, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015) (treatment with narcotics, epidural steroid injections, and TENS

usage not conservative).

As to Plaintiff's post-surgical conservative treatment, the ALJ stated that the records did not show consistent complaints about knee pain, consistent use of a walker or assistive device, physical therapy, or the need for supplemental oxygen beyond 12 months. ECF No. 12-1 at 45, 48. She also noted that an orthopedist indicated that Plaintiff was not a candidate for hip surgery. *Id.* at 48.

Such observations, however, are the equivalent of stating that Plaintiff's symptoms are not fully corroborated by the objective medical evidence. *Clarke*, 2010 WL 1540022, at *16; *Palmer*, 2012 WL 3779046, at *5. As discussed further below, the ALJ cannot solely rely on the absence of objective medical evidence to discredit Plaintiff's subjective symptom testimony. *Burch*, 400 F.3d at 680. The ALJ here did not cite any evidence in the record that suggested Plaintiff opted for conservative treatment in lieu of more aggressive treatment after her back surgery, or that indicated a more aggressive option was recommended or even available. *See Clarke*, 2010 WL 1540022, at *15 ("There is no indication from any of the treatment records that more aggressive treatment was foregone in favor of conservative treatment"). As Plaintiff points out, she was unable to get hip surgery because she needed to lose weight first, not because she chose to forego that recommendation. ECF No. 12-2 at 833, 1271. And the "theoretical existence of a more aggressive treatment option"—such as physical therapy or other interventions—does not support a finding of conservative treatment. *Palmer*, 2012 WL 3779046, at *5. This therefore was not a specific, clear, and convincing reason for the ALJ to discount Plaintiff's testimony. *Id.*

### *2. Effectiveness of Treatment*

Similarly, the ALJ did not credit Plaintiff's testimony because her symptoms were effectively controlled with treatment. ECF No. 12-1 at 34–40. Plaintiff claims that this is not a sufficient reason to discredit her testimony because although her pain is somewhat reduced with medication, this has not translated to greater functional abilities as she remains significantly impaired. ECF No. 16 at 11–13. But, as noted above, the Commissioner claims that the ALJ properly discounted Plaintiff's testimony because the record showed evidence of conservative

and effective treatment. ECF No. 18 at 9–10.

An ALJ may reject the testimony of a claimant whose symptoms are fairly controlled with treatment. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) ("[T]he ALJ reasonably noted that the underlying complaints upon which her reports of pain were predicated had come under control."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). However, the examples cited to show a claimant's improvement must "constitute examples of a broader development" to satisfy the specific, clear, and convincing standard. *Garrison*, 759 F.3d at 1018.

Here, the ALJ pointed to the effectiveness of opioid pain medication at various points, noting that Plaintiff's pain was adequately controlled, her quality of life improved without side effects, she was "stable" on medication, and refilling her medication indicated their effectiveness. ECF No. 12-1 at 37, 42, 47–48. But although Plaintiff may have experienced periods of improvement, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. And as one district court explained: "to reject a claimant's testimony, it is not enough for the ALJ to show that the pain was responsive to treatment; the ALJ must show that the pain was 'controlled,'. . . *i.e.*, no longer debilitating. The fact that a claimant experienced a brief period of reprieve following treatment does not support a finding that her pain was controlled. Rather, the ALJ must show that the treatment was capable of providing lasting relief." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016). As discussed above, although Plaintiff's early treatment notes indicate periods of time in which her pain was controlled by opioids, *see, e.g.*, ECF No. 12-1 at 1833, the record as a whole demonstrates that her symptoms required ongoing, more aggressive treatments. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he treatment records must be viewed in light of the overall diagnostic record."). The ALJ therefore did not show "a broader development" of improvement to satisfy the specific, clear, and convincing standard. *Garrison*, 759 F.3d at 1018.

### *3. Daily Activities*

The ALJ also discounted Plaintiff's symptom testimony because she found that her "ability to carry out activities of daily living. . . indicate that she can perform work within" the RFC limitations. ECF No. 12-1 at 50. Plaintiff argues that the ALJ merely mentioned Plaintiff's activities of "yard work" and "walking" without context and failed to identify which part of Plaintiff's testimony was supposedly contradicted by these activities. ECF No. 16 at 15–16. The Commissioner responds that Plaintiff's daily activities of performing chores, preparing meals, caring for pets, driving a car, and shopping in stores are inconsistent with the severity of the symptoms she alleged and demonstrate that her complaints are exaggerated. ECF No. 18 at 10. But Plaintiff counters that because the ALJ did not mention any of the daily activities raised by the Commissioner, the Commissioner cannot pull post hoc rationalizations from the record to justify the ALJ's decision. ECF No. 19 at 7.

A plaintiff can be found disabled even if she is able to perform some activities of daily living. *See Garrison*, 759 F.3d at 1016. However, an ALJ can discredit a claimant's testimony when the claimant reports participation in activities that are "inconsistent with the alleged severity of her limitations." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 112–13 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (citations omitted).

Here, the Commissioner contends that Plaintiff's daily activities show that her claims are exaggerated. ECF No. 18 at 10. In her opinion, the ALJ noted that Plaintiff's daily activities of yard work and walking indicated that she could perform work within her RFC limitations. ECF No. 12-1 at 50. The ALJ also mentioned that "despite her limitations," Plaintiff can still drive and shop in stores for an hour at a time. *Id.* But "[o]nly if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722. And here, simply listing Plaintiff's daily activities devoid

of context does not substantiate such a finding. *Id.* at 722–23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports."). The ALJ did not explain how yard work, walking, driving, or shopping for an hour undermined Plaintiff's testimony or the claimed extent of her limitations. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"). This therefore was not a sufficient reason to discredit Plaintiff's testimony. *Id.*

The ALJ also found that Plaintiff's daily activities indicated that she could work. ECF No. 12-1 at 50. The Ninth Circuit recognized that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) *superseded on other grounds by* 20 C.F.R. § 404.1502(a). "Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Id.* "The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotations and citation omitted).

But here, the ALJ did not articulate how Plaintiff's daily activities would be transferrable to the workplace. And because the activities are listed devoid of context, it is not apparent that Plaintiff spends a "substantial" part of her day engaging in such activities. Thus, this too is not a sufficient reason to discount her testimony. *Ghanim v. Colvin*, 763 F.3d at 1165 ("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial' portion of Ghanim's day, or were 'transferrable' to a work environment.").

### 4. Objective Medical Evidence

Finally, the ALJ pointed to the objective medical evidence as a reason for not crediting

1  Plaintiff's testimony. ECF No. 12-1 at 42–48. Plaintiff contends that because the ALJ failed to
2  provide other adequate reasons for discrediting her testimony, the ALJ's claim that the extent of
3  Plaintiff's symptoms is not fully corroborated by the objective medical evidence cannot be the
4  sole basis for discounting her testimony. ECF No. 16 at 17. The Commissioner responds that this
5  was a proper reason for discrediting her testimony because the objective medical evidence was
6  inconsistent with the testimony. ECF No. 18 at 8–9.

7  Plaintiff is correct that the ALJ "may not reject a claimant's subjective complaints based
8  solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*,
9  400 F.3d at 680. "This means that an ALJ cannot effectively render a claimant's subjective
10 symptom testimony superfluous by demanding positive objective medical evidence 'fully
11 corroborat[ing]' every allegation within the subjective testimony. *Smartt*, 53 F.4th at 495. But
12 "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective
13 testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498 (emphasis in
14 original).

15 Here, the ALJ found that Plaintiff's reported symptoms "are not entirely consistent with
16 the medical evidence." ECF No. 12-1 at 41. However, in explaining such a finding, the ALJ did
17 not point to specific testimony that was undermined or contradicted by the objective medical
18 evidence. The Commissioner too did not explain how the medical evidence was inconsistent with
19 Plaintiff's testimony. Instead, the ALJ stated there was "no indication" or "no evidence" of knee
20 pain; back, knee, or hip deformities; walker or assistive device use; limitations with sitting; or
21 headaches. *Id.* at 45–49. But this simply means that the ALJ found that the objective medical
22 evidence did not "fully corroborate" Plaintiff's symptoms. *Burch*, 400 F.3d at 680.

23 At another point, the ALJ explained how she accounted for certain limitations in her RFC
24 determination and stated that the objective medical evidence did not support further limitations.
25 ECF No. 12-1 at 48. But this amounts to a summary of the medical evidence supporting her RFC
26 determination, which is not a specific, clear, and convincing reason for rejecting Plaintiff's
27 symptom testimony. *Brown-Hunter*, 806 F.3d at 494.
28

15

In terms of Plaintiff's use of a walker, the ALJ appeared to suggest that the objective medical evidence contradicted Plaintiff's testimony but did not identify the particular testimony nor sufficiently explain how it was contradicted by the objective medical evidence. For example, she found that "there is no indication that an assistive device is medically necessary given that it is not used consistently and that claimant's reported basis for needing one is not even associated with a medically determinable impairment." ECF No. 12-1 at 48. She also noted many times throughout her opinion that there was "no indication" or "no evidence" of walker use. *Id.* at 45–48. And Plaintiff did testify about her use of a walker. *See id.* at 325. But the ALJ did not explain what Plaintiff testified and how it was belied by the evidence. Thus, this is not akin to the inconsistencies identified in *Smartt,* 53 F.4th at 497. In *Smartt*, the ALJ pointed to specific testimony from the claimant that she had not driven since a certain date and was unable to walk without a walker, which was directly contradicted by a report that she routinely drove a car and "multiple specific examples" of her inconsistent use of mobility aids. *Id*. Because the ALJ here did not even articulate what Plaintiff represented in terms of her walker use—as well as other symptom testimony regarding her limitations—this was not a sufficient reason to reject her testimony. *Id.* at 495.

\* \* \*

The ALJ only made a general credibility finding and never identified *which* particular testimony she found not credible and never explained how the evidence contradicted that testimony. This error was not harmless as the ALJ did not provide enough reasoning for the Court to meaningfully review. *Brown-Hunter*, 806 F.3d at 494. Moreover, another ALJ crediting Plaintiff's symptom testimony could have reached a different disability determination, likewise rendering the error not harmless. *Stout*, 454 F.3d at 1055–56.

**C. Remand for further proceedings is the appropriate remedy**

Plaintiff asks the Court to reverse and remand for a direct award of benefits because she contends that she meets the three requirements of the "credit-as-true" test. ECF No. 16 at 18. The Commissioner, however, requests that the Court remand the case for further proceedings because

evidence in the record supports the ALJ's findings and there is "serious doubt" that Plaintiff is disabled given inconsistencies the normal clinical findings, daily activities, and conservative treatment. ECF No. 18 at 12.

When an ALJ improperly rejects a claimant's symptom testimony without providing legally sufficient reasons, the court may grant a direct award of benefits when certain conditions are met. *Garrison*, 759 F.3d at 1019. The three-part analysis of such conditions is known as the "credit-as-true" test. *Id.* The credit-as-true test first asks (1) whether the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony, and (2) whether there are outstanding issues that must be resolved and whether further administrative proceedings would be useful. *Id.* at 1020; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). When the first two conditions are satisfied, the court then credits the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability. *Treichler*, 775 F.3d at 1101. But even after reaching the third step and crediting the claimant's testimony as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings. *Id.* at 1101–02.

As explained above, the Court finds that at the first step, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony. At step two, the Court considers whether the record as a whole is free from conflicts, ambiguities, or gaps, and whether all factual issues have been resolved. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). And in considering the record, the Court finds that further administrative proceedings would be useful.

Plaintiff contends that because the ALJ posed a hypothetical to the vocational expert regarding being off task 15 percent or more of time or being absent more than two days a month, and the VE testified that such an individual could not work, the record is complete. ECF No. 16 at 18. However, it is unclear which limitations the ALJ was accounting for in posing that hypothetical. In addition, Plaintiff does not explain which limitations the question considers other than stating that disability would have been warranted if the ALJ credited her testimony. *Id.* at 10. As discussed above, the ALJ discredited Plaintiff's testimony, in part, because the

17

record did not fully corroborate the extent of Plaintiff's knee pain; back, knee, or hip deformities; walker or assistive device use; limitations with sitting; and headaches; among other symptoms. The ALJ also did not sufficiently explain which particular testimony was contradicted or how Plaintiff's treatment was considered conservative.

But questions remain as to these limitations. While the ALJ posed hypotheticals to the VE for a person who required the use of a walker, she did not pose any hypotheticals regarding Plaintiff's ability or inability to sit for certain periods of time nor whether an individual with a certain frequency of headaches could work. This case therefore does not fit in with the category of cases in which the credit-as-true test was satisfied. *See, e.g.*, *Trevizo*, 871 F.3d at 683 (vocational expert "specifically opined" about potential limitations); *Garrison*, 759 F.3d at 1022 (same); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (vocational expert testimony "clearly established" claimant could not perform any substantial gainful work).

Because further administrative proceedings are necessary, the Court need not reach the third step of the analysis. *Treichler*, 775 F.3d at 1107. But even if Plaintiff's testimony was credited, it is not clear that the ALJ would be required to find Plaintiff disabled given the gaps in the hypotheticals posed to the VE. *Leon v. Berryhill*, 880 F.3d 1041, 1048 (9th Cir. 2017). Because Plaintiff fails to satisfy the credit-as-true test, the Court remands the case for further proceedings.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reversal and/or Remand (ECF No. 16) is **GRANTED** consistent with this Order.

**IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion to Affirm (ECF No. 18) is **DENIED**.

**IT IS FURTHER ORDERED** that on remand, the ALJ consider the context and limitations of Plaintiff's daily activities, the nature of her treatment regimen, Plaintiff's subjective symptom testimony, and any other part of the decision as necessary considering the updated record on remand, including Plaintiff's RFC and any hypotheticals given to the

vocational expert.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.

DATED this 10th day of September 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE